THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY
v. S. J. MOURIQUAND.

1. FACTS, *Stated*—*Witness, Competent to Give Opinion.* A person who
has testified on the trial that he is fifty years of age; that he has fol-
lowed farming all his life; that he has had experience in growing
orchards of fruit trees; that he has put out in his life-time three or
four different orchards; that he knew at the time of the construction
of the railroad through the premises that there was "quite a nice
little orchard there"; that he had been over the premises very fre-
quently; that he lived only two miles from the same; that while he
could not say he knew the particular trees taken, he knew what fruit
trees planted in such an orchard were reasonably worth at the time
of the construction of the road, is competent to give his opinion of
the value of fruit trees, two, three and five years old, which were
growing in an orchard on the premises, but taken or destroyed by a
railroad company in constructing its road over its right-of-way.

2. ——— *Case, Followed.* The case of *City of Topeka v. Martineau,* 42
Kas. 387, followed.

*Error from Chautauqua District Court.*

THE opinion states the case. Judgment for the plaintiff
*Mouriquand,* on November 26, 1887. The defendant *Com-
pany* comes to this court.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plain-
tiff in error.

*J. D. McBrian,* and *Dan M. Pile,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Mrs. S. J. Mouriquand appealed to the
district court of Chautauqua county from the award of com-
missioners condemning a right-of-way through lands owned
by her. The condemnation commissioners awarded as dam-
ages the sum of $202.50. Three acres of land were taken
for the right-of-way. The jury returned a verdict of $772.10.
Judgment was entered upon the verdict. The railroad com-
pany excepted to the rulings and judgment of the court, and
brings the case here.

Upon the trial there was evidence tending to show that in constructing the railroad across the premises in controversy 137 peach trees, 9 apple trees, 2 cherry trees and 1 plum tree were taken or destroyed. Some of the witnesses, who knew the value of peach, apple, cherry and plum trees in the orchard, and had actual knowledge of the trees taken from the premises, testified that the peach and apple trees were worth $5 each, and the plum and cherry trees $2 each. Two hundred twenty-eight dollars and fifteen cents were allowed for the trees taken.

Complaint is made because D. C. Chilcote was permitted to testify as to the value of the fruit trees when he was not acquainted with the particular trees taken or destroyed by the railroad. We think his evidence was competent. He testified that he was fifty years of age; that he lived two miles from the premises; that he had resided there six years; that he had been over the premises very frequently; that he had followed all his life farming and cattle-raising; that he had had experience in growing orchards of fruit trees; that he had put out in his life-time, three or four different orchards; that he knew at the time of the construction of the railroad through the premises that there was "quite a nice little orchard upon it," and while he could not say that he knew the particular trees taken, he knew what fruit trees planted in such an orchard were reasonably worth at the time of the construction of the road. He had, therefore, such knowledge and experience as enabled him to form an opinion as to the value of the trees. "It is not necessary," said Johnson, J., in case of *Whitbeck v. N. Y. C. Rld. Co.*, 36 Barb. 644, "that he [the witness] should actually have seen or been familiarly acquainted with the trees in question. It was enough that he was acquainted with the fruit business in that neighborhood and the value of similar property there." (See Lawson on Opinion Evidence, 19.)

Complaint is further made that the court erred in instructing the jury concerning the view of the premises which they

had been permitted to make.   One or two lines of the instructions are open to criticism, but we do not think, in view of the decision in *City of Topeka v. Martineau,* 42 Kas. 387, that the instructions were so incorrect as to reverse the judgment.   In the Martineau case, this court ruled that a direction to the jury to use the result of their observation in connection with the sworn evidence was not erroneous.   In the present case the court said, among other things, to the jury: "You have also been permitted to go in a body and view the premises, in addition to hearing this evidence, and you are at liberty to take into consideration in making up your verdict whatever you may have seen in and about the premises."

With the admonition that they were not to rest their verdict solely on what they learned at the view, it might have been better to have gone no further in the instruction referred to, as the object of permitting the jury to view the premises is to enable them to intelligently understand and apply the testimony which has been introduced before them.   But when the court directed the jury to disregard any evidence, it must be construed with the following language: "In making up your verdict you should consider the evidence, and give it fair and impartial consideration, and you will also take into consideration your own view of the premises."   The jury were permitted by the whole instruction to decide between the conflicting evidence upon their own view of the premises.

Had the jury disregarded all the sworn evidence, and returned a verdict upon their own view of the premises, then it might be said that the evidence which the jurors acquired from making the view had been elevated to the character of exclusive or predominating evidence.   This is not allowable. The evidence of the witnesses introduced in the court on the part of the land-owner, supports fully the verdict.   If the verdict was not supported by substantial testimony given by witnesses sworn upon the trial, we would set it aside, but as the jury only took into consideration the result of their view

of the premises, in connection with the sworn evidence produced before them, to determine between conflicting evidence, the instruction was not so erroneous as to require a new trial.

Complaint is also made that the special findings conflict with the general verdict. The 13th interrogatory submitted to the jury reads:

"Q. What were the several elements and sources of damages which make the aggregate of all of the damages sustained by plaintiff? Give each item separately, with the amount of such damages. A. Trees, $228.15. Pond, $100. Opening gates, $250. Land taken for right-of-way, $60. Damage to land north and south of road, $61.85."

Adding these items, the total amount of damages according to the special findings, is $700, but the general verdict was $772.10. It appears, however, under the instruction of the court, that the jury allowed interest in their general verdict. Adding interest to the several itemized amounts in the special findings, and there is no conflict between these findings and the general verdict.

The judgment of the district court will be affirmed.

All the Justices concurring.